**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In the matter of the Complaint of RAMY ELMORSHIDY, as Owner of the *1999 Kencraft Challenger 190, Hull Identification Number KCMK1358F999*, petitioning for Exoneration from or Limitation of Liability | Civil Action No.: <u>1:25-cv-10792-WGY</u> |

## <u>CLAIM AND DEMAND FOR TRIAL BY JURY</u>

**NOW COMES,** the Claimant, Brandon Baglio, and states his Claim[1] in the above entitled action as follows:

1.    Claimant, Brandon Baglio ("Claimant" and/or "Mr. Baglio"), is an individual, domiciled in Florida at 1625 South Federal Highway, Apt. 416, Pompano Beach, FL 33062.

2.    Upon information and belief, Petitioner, Ramy Elmorshidy ("Petitioner" and/or "Mr. Elmorshidy"), is an individual, domiciled in Massachusetts, and at all times hereafter referred to, owned and/or controlled the subject vessel, the then unnamed, *1999 Kencraft Challenger 190, Hull Identification Number KCMK1358F999* (the "Vessel"), upon which Mr. Baglio was injured.

3.    The Vessel is a pleasure boat, or yacht, used exclusively for the pleasure and leisure purposes of its Owner, Mr. Elmorshidy.

4.    On the night of August 13, 2022, the Claimant, and a number of other persons, met the Petitioner at the Dorchester Yacht Club to begin a night of festivities.

---

[1] This instant Claim is filed contemporaneously with the Claimant's Answer, pursuant to applicable laws and rules, including but not limited to, Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

5.   At the Dorchester Yacht Club, the group, including the Claimant and the Petitioner, boarded the Vessel owned by Mr. Elmorshidy.

6.   The group departed the Dorchester Yacht Club with Mr. Elmorshidy at the controls of the Vessel.

7.   The Vessel travelled to Boston's Seaport District where Mr. Elmorshidy moored and tied the Vessel off so that he and his group could venture to Scorpion Bar, a nightclub in Boston's Seaport District.

8.   At Scorpion Bar, the group drank alcohol.

9.   Mr. Elmorshidy drank alcohol at the Scorpion Bar.

10.   Later in the night, the group returned and once again, boarded Mr. Elmorshidy's Vessel.

11.   Mr. Elmorshidy began to pilot the Vessel back to the Dorchester Yacht Club from the Seaport District.

12.   Mr. Elmorshidy's Vessel was traveling between Boston's Seaport District and the Dorchester Yacht Club in the early hours of August 14, 2022 when the subject maritime casualty occurred (the "Accident").

13.   At a certain point during the journey, Mr. Baglio was situated near the bow (the front) of the Vessel.

14.   Mr. Elmorshidy caused and/or allowed a cooler to be placed in the walkway near the bow which impeded passengers including Mr. Baglio.

15.   Mr. Baglio was caused to move further towards the bow as a result of the placement of this cooler.

16.    At a point when Mr. Baglio was at the bow of the Vessel, Mr. Elmorshidy was in

control of the Vessel.

17.    According to verbal statements made at the time of the incident, captured on a

body camera worn by responding City of Boston police officers, a witness

believed to be Mr. Elmorshidy, stated to law enforcement that while he was

operating the Vessel, observed a buoy (a navigational aid), and in an attempt to

avoid the buoy, swerved the Vessel suddenly, which resulted in Mr. Baglio being

thrown into the water.[2] See Selection of Body Cam Footage, attached hereto as

**Exhibit 1** to this Claim.

18.    This witness, [believed to be Mr. Elmorshidy], stated on the body-camera

footage, that he knew the Vessel ran over Mr. Baglio and that the Vessel's

propeller struck Mr. Baglio. Id.

19.    Mr. Elmorshidy, as owner, operator, and/or master, at the helm of the Vessel

negligently operated, mishandled and/or allowed the Vessel's navigation and its

controls to be mishandled by not appropriately navigating in the presence of a

buoy, failing to keep a proper look-out, by juicing the throttle, causing a sudden

jolt of forward movement or sideward movement, and then causing/allowing the

---

[2] Time stamp 9:30-10:00
O: So what happened? They were just, you guys were—
R: He was standing on the front of the **boat and we saw a buoy**
O: Yeah.
R: It was like **"red right return"**—
O: Uh huh, uh huh.
R: **Turned, fell off the boat** [unintelligible]
O: Oh okay, got it. So he was on the boat, fell off the boat, and then I'm guessing the propeller hit him as he fell off.
R: Yeah.
O: Got it.
R: The second he fell off I was like "oh yeah" like "that went right over him".

Vessel to decelerate quickly, which caused Mr. Baglio to be violently thrown from the front of the Vessel and into the water.

20.   The Vessel continued moving forward and the Vessel ran over Mr. Baglio.

21.   As the Vessel ran over Mr. Baglio, his leg was cut open by the Vessel's propeller blades, resulting in severe personal injuries including but not limited to, deep lacerations to his left knee, thigh, and leg.

22.   Mr. Elmorshidy, the Petitioner, observed the Accident as described above, and negligently allowed faulty navigation of the Vessel causing serious injuries to Mr. Baglio.

23.   Mr. Baglio lost a significant amount of blood from a large laceration on his leg due to the injury sustained.

24.   Mr. Baglio was profusely bleeding when he was pulled from the water on to the Vessel, and emergency services were called via 9-1-1 at approximately 02:51 AM.

25.   The Vessel returned to her home slip at the Dorchester Yacht Club, whereupon Mr. Baglio and the Petitioner were met by emergency services personnel.

26.   The contemporaneous record of the report by the Boston Police Department indicated that Mr. Baglio suffered a "significant gash" to his leg. See the Police Report marked as **Exhibit 2**, and Photo of Injury marked as **Exhibit 3**.

27.   Mr. Baglio was transported to the Emergency Room at Boston Medical Center via ambulance by Boston EMS, who noted that Mr. Baglio had been treated with an "improvised tourniquet" prior to their arrival. See **Ex. 2.**

28.   After an emergency surgery was performed at the hospital, Mr. Baglio survived.

29.  Mr. Baglio's recovery process since the initial surgery has been long and extremely taxing.

30.  Since the date of the Accident and afterwards, Mr. Baglio contacted Mr. Elmorshidy via text and phone call to let him know that Mr. Baglio intended to file a claim for the vessel's insurer. Mr. Baglio inquired as to the insurance claim number so that the medical bills stemming from the Accident could be paid because the medical providers were billing his health insurance, and the bills were substantial, so if they were not covered by the Petitioner's applicable insurance policy, Mr. Baglio would then be personally liable.

31.  Mr. Baglio's attorney has also been in contact personally with the Petitioner via text message and phone call, to notify the Petitioner of the claim and of Mr. Baglio's damages.

32.  On April 29, 2024, almost one (1) year prior to the filing of this instant matter, the Petitioner was called on his personal cellphone by Mr. Baglio's attorney, via previous counsel James Hasson, Esq. A brief conversation ensued, and a text message from the lawyer to the Petitioner notified the Petitioner of the possibility of a claim and requested that the Petitioner get his insurer to call Mr. Baglio's counsel, and respond to the claim. See Text Message and Contemporaneous Billing Record marked as **Exhibit 4**.

33.  Thus, Mr. Elmorshidy did not file this instant Petition in a timely manner because it was not filed within the six (6) month statutory period under the Shipowner's Exoneration From/Or Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq* ("LOLA")*,* since the Petitioner had the requisite knowledge and/or privity of the

Accident as a witness to the injuries, and since then, had the requisite notice by being personally informed of the claim and the likelihood that the damages would reasonably be over and above the Petitioner's statement of value of the Vessel.

34.    Thus, the Petitioner was apprised of the requisite notice since the day of the Accident, and furthermore, knew or should have known that Mr. Baglio's injuries were reasonably likely to result in a claim and that the claim for personal injuries was likely to exceed the value of the Vessel, which as a 19' recreational vessel alleged to be valued at $16,000.00, would not satisfy Mr. Baglio's claim.

35.    The Petitioner was in privity and/or knowledge as to the Accident underlying Mr. Baglio's claim, as he was present on the Vessel, and as owner, operator and/or master of the Vessel, had a duty to the passengers, including to the Claimant, to refrain from negligent actions, concerning the safe navigation of the Vessel.

### COUNT I: MARITIME NEGLIGENCE[3]
### (BRANDON BAGLIO V. RAMY ELMORSHIDY)

36.    Claimant incorporates by reference all of the allegations contained in the foregoing paragraphs as if they were fully restated herein.

37.    Mr. Baglio's Claim is brought as a maritime negligence suit under the General Maritime Law of the United States because of the traditional maritime activity nexus involved in Mr. Baglio's injury and that the Accident occurred in navigable waters in Boston Harbor/Dorchester Bay.

38.    The Petitioner was the owner, master, and/or operator of the Vessel on which the Claimant was a passenger on the dates of August 13 and 14, 2022.

---

[3] A Complaint and Demand for Jury Trial is being contemporaneously filed in Superior Court in the Commonwealth of Massachusetts along with this Court's Order [Dkt. 7] that the Superior Court matter be stayed until this instant action is disposed of, or the stay lifted.

39.    As the Vessel owner, master, and/or operator, the Petitioner owed a duty to the Claimant as his passenger, to, among other things, exercise reasonable care under the circumstances while piloting the Vessel.

40.    Mr. Elmorshidy breached his duty to Mr. Baglio by piloting the Vessel negligently, and/or by entrusting another to negligently pilot the Vessel in his immediate presence which then caused Petitioner to suffer severe injuries.

41.    More specifically, personal injuries sustained by the Claimant were not caused by any fault of his own part but were caused by the negligent failure of the Petitioner as follows:

     i.    Petitioner operated the Vessel under the influence of alcohol;

     ii.    Petitioner operated the Vessel negligently by failing to use care in navigation by failing to maintain a proper look out by sight or hearing according to applicable rules, regulations, and laws, including but not limited to, 33 C.F.R. § 83.05[4], and COLREG RULE 5, by Failing to Use a Safe Speed, COLREG Rule 6, and by Failing to Navigate Safely under Conditions of Restricted Visibility, COLREG Rule 19[5];

     iii.    Petitioner negligently in the alternative entrusted the Vessel to an untrained passenger who violated the above regulations and rules under

---

[4] "Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision." § 83.05 Look-out (Rule 5).

[5] COLREGS, standing for the "Convention on the International Regulations for Preventing Collisions at Sea," are the international rules of the road for ships and other vessels on the high seas. These regulations, developed by the International Maritime Organization (IMO), aim to prevent collisions and ensure safe navigation. The COLREGS are a legally binding convention that all vessels flying the flags of signatory states must comply with.

conditions where the Petitioner had a duty to act to prevent the unsafe navigation;

iv.  Petitioner has alleged that he and no other person "turned off the motor" after Mr. Baglio went into the water per Paragraph 14 of Petitioner's Complaint;

v.  Petitioner negligently entrusted the Vessel to someone who did not have the proper experience and/or knowledge necessary to operate the Vessel in a reasonably safe manner;

vi.  More specifically, the Petitioner negligently entrusted the Vessel to someone who did not have the proper experience and knowledge necessary to operate the Vessel under the weather and sea conditions that were present in the early hours of August 14, 2022;

vii.  Petitioner allowed the Vessel to be operated negligently;

viii.  Petitioner allowed the Vessel to be operated by someone under the influence of alcohol;

ix.  Petitioner failed to designate and make, maintain, designate, and/or keep a proper look-out aboard the Vessel;

x.  Petitioner failed to properly supervise the actions of his passenger, whom he had entrusted the control of the Vessel to; and,

xi.  Any alleged negligence of the Claimant was not the proximate cause of the Claimant's injuries, and moreover, the Petitioner had an overarching duty to all passengers -- including the Claimant -- to operate the Vessel

safely under the conditions that existed at that time, including any open and obvious actions of the Claimant.

42.   As a result of the negligence of the Petitioner, the Claimant was caused to sustain severe injuries to his left leg, thigh, and knee, among other injuries.

43.   As a result of said injuries, Claimant has suffered pain of body and anguish of his mind, incurred medical expenses and likely to incur future medical expenses, and has sustained and will continue to sustain other damages that will be shown at trial.

44.   Claimant claims damages in the amount to be shown by evidence at trial for his injuries; for his mental and physical pain and suffering, past, present, and future; past loss of earnings; loss of earning capacity; and for his expenses of medical treatment.

**WHEREFORE**, Claimant, Brandon Baglio, demands judgment against Petitioner, Ramy Elmorshidy, for all recoverable compensatory damages to fully and fairly compensate him for his injuries and damages, in addition to court costs, pre-judgment and post-judgment interest, attorneys' fees, and such other relief as this Honorable Court deems just.

## <u>DEMAND FOR A JURY TRIAL</u>

Claimant respectfully requests that this honorable Court try this matter by a jury trial pursuant to Fed. R. Civ. P. 39(c).

Date: May 28, 2025

Date: May 28, 2025                    Respectfully submitted,
                                      Brandon Baglio
                                      By his attorneys,

                                      /s/ Michael B. Flynn
                                      Michael B. Flynn, Esq. BBO No. 559023
                                      mflynn@flynnwirkus.com
                                      Kathleen A. Reagan, Esq. BBO No. 549108
                                      kreagan@flynnwirkus.com
                                      Flynn Wirkus P.C.
                                      350 Granite Street, Suite 1204
                                      Braintree, Massachusetts
                                      P: (617) 773-5500
                                      F: (617) 773-5510


## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2025, I electronically filed the within document

with the Clerk of the Court using the CM/ECF system which will send notification of such

filing to all counsel of record.

Lauren Motola-Davis, Esq. BBO No. 638561
Lauren.motoladavis@lewisbrisbois.com
Nicole L. Andrescavage, Esq. BBO No. 705093
nicole.andrewscavage@lewisbrisbois.com
Lewis Brisbois Bisgaard & Smith, LLP
One citizens Plaza, Suite 1120
Providence, Rhode Island 02903
P: (401) 406-3310
F: (401) 406-331216

                                      /s/ Michael B. Flynn
                                      Michael B. Flynn, Esq.

10